IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

**TRISHAA R. [1]**

    Plaintiff,

  v.

**COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,**

    Defendant.

Civ. No. 3:24-cv-1444-CL

**OPINION AND ORDER**

_____

MARK D. CLARKE, Magistrate Judge.

  Plaintiff Trishaa R. seeks judicial review of the final decision of the Commissioner of the
Social Security Administration denying her claim for disability insurance benefits and
supplemental security income. Full consent to magistrate judge jurisdiction was entered on
August 30, 2024 (ECF No. 4). For the reasons provided below, the Commissioner's decision is
AFFRIMED.

## BACKGROUND

  On December 28, 2020, Plaintiff filed an application for disability insurance benefits and
supplemental security income, alleging disability beginning on January 20, 2021, when she was
46 years old. Tr. 1060-74. The claims were denied initially and on reconsideration. Tr. 862-75,
889-98. Plaintiff requested a hearing before an administrative law judge and appeared before
ALJ Jo Hoenniger on April 28, 2023. Tr. 804-39. Plaintiff, represented by her attorney, and a

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the
non-governmental party or parties in this case.

vocational expert testified at the hearing. Tr. 804-39. The ALJ found Plaintiff not disabled in a

written decision issued September 22, 2023. Tr. 748-75. The Appeals Council denied review on

July 5, 2024, making the ALJ's decision the final agency decision. Tr. 1-7. Plaintiff now requests

that the United States District Court review the ALJ's decision and alleges harmful legal error.

Pl. Br., ECF No. 10 at 2-18.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §

423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining

whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v.*

*Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks

the following series of questions:

1.   Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§
     404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
     significant mental or physical duties done or intended to be done for pay or
     profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such
     work, she is not disabled within the meaning of the Act. 20 C.F.R. §§
     404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
     substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's
     regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
     expected to result in death, an impairment is "severe" if it significantly
     limits the claimant's physical or mental ability to do basic work activities.
     20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or
     must be expected to last for a continuous period of at least 12 months. 20
     C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
     impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);

416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

        a.  The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work

which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1.  Plaintiff has not engaged in substantial gainful activity since January 27, 2017, the [initial] alleged onset date. Tr. 755.[2]

2.  Plaintiff had the following severe impairments: lupus, chronic pain, lumbar and cervical degenerative disc disease with history of L4-5 microdiscectomy, status post rotator cuff surgery, coronary artery disease (Takosubo's cardiomyopathy), hypertension, and migraines treated with Botox. Tr. 755.

3.  Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 757.

4.  Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and walk 2 hours total in an 8 hour workday; can sit about 6 hours in an 8 hour workday; can occasionally push and pull, and use foot pedals; can occasionally climb ramps and stairs; should not climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel and crouch; should not crawl; can occasionally reach overhead with the bilateral upper extremities; can frequently reach in front and laterally with the bilateral upper extremities; can tolerate occasional exposure to extreme cold, extreme heat, wetness, vibration, airborne irritants (such as fumes, odors, dusts, gases and poor ventilation) and hazards (such as exposed moving mech parts); should have no exposure to exposed heights; and can tolerate no more than a moderate noise level. Tr. 758.

5.  Plaintiff was unable to perform any past relevant work. Tr. 765.

6.  Plaintiff was born on July 6, 1974 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Tr. 765.

---

[2] Plaintiff later amended her alleged onset date to January 20, 2021. Tr. 751.

7. Considering the Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, such as Collator Operator (DOT 208.685-010, light, SVP 2, Reasoning Level 2, 33,036 jobs nationally); Routing Clerk (DOT 222.687-022, light, SVP 2, Reasoning Level 2, 117,479 jobs nationally; and Retail Marker (DOT 209.587-034, light, SVP 2, Reasoning Level 2, 136,788 jobs nationally). Tr. 766.

8. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from January 27, 2017, the alleged onset date, through September 27, 2023, the date of decision. Tr. 766-67.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation,

the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53

F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may

not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec.*

*Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a

reviewing court "cannot affirm the [Commissioner's] decision on a ground that the

[Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454

F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the

Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden

of showing that an error is harmful normally falls upon the party attacking the agency's

determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set

aside if the proper legal standards were not applied in weighing the evidence and making the

decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42

U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript

record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or

without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ provided clear and convincing reasons to discount her symptom
   testimony,

2. Whether the ALJ sufficiently considered Plaintiff's migraines at step three, and

3. Whether the ALJ supported her Step Five determination with substantial evidence.

For the following reasons, the Court finds that the ALJ did not err, and the

Commissioner's decision is AFFIRMED.

## I.    Step Three

Plaintiff first argues this case must be remanded because the ALJ did not properly

consider whether her migraines met or equaled a Listing at step three. Pl.'s Br. at 4-7 (citing

Social Security Ruling (SSR) 19-4p, 2019 WL 4169635. At step three, the ALJ determines

whether a claimant's impairment or combination of impairments meets or equals the criteria for a

listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Where an impairment does so, it

is per se disabling and the ALJ has no discretion in awarding benefits. 20 C.F.R. §§ 404.1520(d),

416.920(d); *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990). However, a headache

diagnosis itself cannot meet the listing requirements because headaches are not a listed

impairment. *Britton v. Colvin*, 787 F. 3d 1011, 1012 (9th Cir. 2015); SSR 12–2p at *6. In other

words, the analysis of a claimant's headache symptoms at step three focuses on whether a

claimant's headache symptoms medically equal a listing. *Id.*

To demonstrate that an impairment medically equals a listing, the claimant must show the

impairment meets all of the medical criteria in that listing. *Sullivan v. Zebley*, 493 U.S. 521, 530

(1990). "An impairment that manifests only some of those criteria, no matter how severely, does

not qualify." *Id.* "[To] equal a listed impairment, a claimant must establish symptoms, signs and

laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant

listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. §

404.1526(a)). Unless a claimant presents evidence in an effort to establish equivalence, an ALJ is

not required to discuss the combined effects of a claimant's impairments or compare them to any

listing in an equivalency determination. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff argues that the ALJ failed to evaluate evidence that her headaches meet or equal

Listing 11.02B. Pl. Br. at 4-5. ALJs analyze headache disorder claims under Listing 11.02, the

listing for epilepsy. *See* SSR 19-4p, *available at* 2019 WL 4169635 (Aug. 26, 2019). To equal

Listing 11.02B, a claimant must have headache events "at least once a week for at least 3

consecutive months despite adherence to prescribed treatment." *Id.* at *7. To determine whether

a claimant's symptoms are "equal in severity and duration to the criteria in 11.02B," the ALJ

must consider:

> A detailed description from an [acceptable medical source] of a typical headache
> event, including all associated phenomena (for example, premonitory symptoms,
> aura, duration, intensity, and accompanying symptoms); the frequency of
> headache events; adherence to prescribed treatment; side effects of treatment (for
> example, many medications used for treating a primary headache disorder can
> produce drowsiness, confusion, or inattention); and limitations in functioning that
> may be associated with the primary headache disorder or effects of its treatment,
> such as interference with activity during the day (for example, the need for a
> darkened and quiet room, having to lie down without moving, a sleep disturbance
> that affects daytime activities, or other related needs and limitations).

*Id.* The ALJ found Plaintiff's migraines were a severe, medically determinable impairment but

they did not equal Listing 11.02. Tr. 757-58. In doing so, the ALJ considered Plaintiff's

symptom testimony about her migraines and the relevant medical opinions in the record. Tr. 760-

64.[3]

The record demonstrates that Plaintiff complained to providers about

headaches/migraines and engaged in various forms of treatment, including medications and

Botox. *See, e.g.*, Tr. 760, 762, 2888. The medical record documents Plaintiff's migraines as

responsive to medication, "not intractable," and that she indicated 50%-to-70% relief from

treatment. *See, e.g.,* Tr. 2901, 3037. The only medical opinions of record addressing this

---

[3] Plaintiff argues the ALJ "failed to meaningfully consider listing 11.02B" because the analysis concerning her headaches does not appear in the step three portion of the opinion. Pl. Br. at 4-5. but the ALJ is not required to articulate specific evidence supporting her finding that the individual's impairment(s) does not medically equal a listed impairment. SSR 17-2p, 2017 WL 3928306, *4. "[A] statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id.* This is because of the ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process." *Id.* The ALJ discussed Plaintiff's migraines at length later in her decision. Tr. 758-65.

impairment–the state agency consulting sources–found that the medical record did not establish presumptive disability at step three. Tr. 869-86.

The ALJ explicitly relied on this evidence in evaluating Plaintiff's migraines pursuant to Listing 11.02 to find that plaintiff was not presumptively disabled, and Plaintiff has not come forth with evidence from during the relevant period to undermine the substantial evidence supporting the ALJ's opinion outside her subjective symptom testimony. Tr. 18-19. As denoted above, plaintiff's subjective reports are insufficient to establish equivalency at step three, especially to the extent they do not document the requisite signs and signals. SSR 19-4p, *available at* 2019 WL 4169635; *Tackett*, 180 F.3d at 1100; *see also Mariah J. v. Kijakazi*, 2023 WL 5827681, *4 (D. Or. Sept. 8, 2023) (self-reports to medical providers "do not conclusively show that [his] headaches meet the criteria of Listing 11.02"). Furthermore, Plaintiff fails to provide the evidence to support a medical equivalence finding, largely citing to additional evidence that she submitted to the Appeals Council. Pl. Br. at 5-6 (citing Tr. 8-742). The Appeals Council reviewed the evidence from the relevant timeframe and found that it did not show a reasonable probability of changing the outcome of the decision. Tr. 2. Plaintiff also submitted evidence that did not relate to the period at issue, which the Appeals Council concluded did not affect the decision about whether Plaintiff was disabled on or before the date of the ALJ's decision on September 27, 2023. Tr. 2. Nor does Plaintiff identify evidence the ALJ overlooked that medically documents the frequency and severity of her headaches to meet the high bar of Listing 11.02B. *See* Pl. Br. at 4-6. As such, the ALJ did not commit reversible error on this basis.

## II.    Subjective Symptom Testimony

Plaintiff also contends the ALJ erred by discrediting her headache testimony and allegations related to her degenerative disc disease. Pl. Br. at 9-13. When a claimant has

medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff highlights several discrete aspects of her testimony she believes the ALJ failed to adequately address. For example, she notes that she testified that when she has a migraine they can last for four hours or she can be in bed for days. Tr. 817. Plaintiff testified that she also has body pain due to her lupus and cervical and lumbar spinal impairments. Tr. 818-820. Plaintiff

testified that she has numbness in her fingertips that make it hard for her to grasp things. Tr. 819.

Plaintiff testified that she is in tears most days due to the pain. She also highlights her testimony

that she suffers from migraines that would cause her to stay in bed most days well exceeds the

number of absences that an employer would allow. Tr. 814-816 and 834. She further argues the

ALJ did not provide reasons to reject her testimony that she must lay down and put something

over her eyes when she has a migraine. Tr. 817. Plaintiff also contends the ALJ did not address

her testimony that she has been having pain and weakness causing falls. Tr. 820. Plaintiff

testified that her lupus causes excruciating pain. Tr. 819. Plaintiff testified that she has numbness

in her fingertips making it hard to grip and grasp. *Id.* Plaintiff also points to her functional report

where she testified that she cannot stand or walk long and that after five minutes she has to stop.

Tr. 1184.

   The ALJ incorporated many aspects of Plaintiff's testimony into the RFC. *See* 20 C.F.R.

§ 404.1545(a) (RFC is the most an individual can do in a work setting despite her limitations).

For example, the ALJ accounted for Plaintiff's complaints about difficulty walking and fatigue

by limiting her to work that allowed her to sit for six hours in a workday Tr. 758, 818-20, 823.

The ALJ accommodated Plaintiff's allegations about chronic pain, fatigue, and difficulty

reaching by restricting her to a range of light work with additional postural, manipulative, and

environmental limitations Tr. 758, 818-20. Finally, the ALJ accepted Plaintiff's testimony that

her headaches constituted a severe medical impairment and restricted Plaintiff's exposure to

potential headache triggers such as airborne irritants and vibration Tr. 758; *see, e.g.*, AR 764,

866, 883-84 (incorporating migraine restrictions from prior administrative medical findings into

RFC). However, the ALJ disagreed that her headaches prevented her from working, instead

reasonably concluding that Plaintiff's more extreme allegations of debilitating limitations were inconsistent with the record Tr. 764.

### A. Objective Medical Evidence

The ALJ reasonably highlighted several objective medical records that suggested Plaintiff's migraines and back issues were not as limiting as she alleged. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). For example, in contrast to Plaintiff's testimony about difficulty walking (Tr. 759, 820), the ALJ considered that Plaintiff could walk without an assistive device and did not have a severely unstable gait. Tr. 761, 1264, 3225. Further, although Plaintiff reported chronic pain and weakness (Tr. 759, 818-19, 823), examinations showed no strength deficits. Tr. 759, 1264, 3216, 3225. Nor did electrodiagnostic testing show any nerve damage that causes weakness, numbness, and pain. Tr. 761, 3219. The ALJ also considered findings from a radiologist that after decompression surgery in March 2017 to address disc protrusion, imaging was unremarkable. Tr. 760-61, 1521. X-rays did not show evidence of herniations (slipped or bulging disc) or severe stenosis (narrowing of spinal cord), and there was stable anatomic alignment, good evidence of decompression, and no evidence of re-herniation (3214, 3217 (11/17/17 lumbar spine x-ray showed "[s]table anatomic alignment"), 3219, 3138-39 ("minimal" and "mild" findings). Likewise, in contrast to Plaintiff's testimony that her fingertips were "constantly numb" and that she had difficulty reaching, Tr. 819, the ALJ noted x-rays showing no degenerative change or other abnormality to her rotator cuff. Tr. 760, 3219). As for numbness, the ALJ highlighted medical records showing only mild neck radiculitis (symptoms caused by a pinched, compressed, or irritated nerve) without distal denervation (nerve degeneration leading to sensory deficits) Tr. 761, 3218. These medical records were further

substantial evidence supporting the ALJ's decision to discount Plaintiff's testimony that her physical and headache-related health limitations rendered her totally disabled.

The ALJ also reasonably relied on the medical opinion evidence reflecting the Plaintiff was not disabled. The state agency findings constitute substantial evidence supporting the ALJ's RFC finding. *See Thomas*, 278 F.3d at 957 (opinions of non-treating or nonexamining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record). Plaintiff has not challenged these medical opinion on appeal. *See generally* Pl. Br. Therefore, she has forfeited any attendant arguments because the Court ordinarily will not consider matters that are not "specifically and distinctly argued" in a party's opening brief. *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (citation omitted). This was further substantial evidence supporting the ALJ's decision to discount Plaintiff's allegations.

Plaintiff urges the Court to adopt a different interpretation of the record, but does not undermine the substantial evidence supporting the ALJ's decision. Specifically, Plaintiff argues the ALJ should have relied on other evidence the ALJ did not cite, or that the ALJ failed to consider her limited ability to perform activities. Pl. Br. at 11-12. But Plaintiff's arguments about supportive aspects of the record are an effort to have this Court re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—Plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though Plaintiff clearly interprets the evidence differently, she has

not (and cannot) establish error by simply advancing a different interpretation of the medical evidence.

### B. *Improvement with Treatment*

The ALJ also rejected Plaintiff's headache testimony in part because the evidence demonstrated improvement with treatment. Tr. 759. An ALJ may also reject a claimant's symptom testimony if that testimony is contradicted by evidence of improvement in the medical record. *Carmickle*, 533 F.3d at 1161. If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

The medical records the ALJ cited showed medication and injection treatment helped Plaintiff's headache symptoms, and this was a clear and convincing reason to discount her symptom testimony. For example, Plaintiff alleged that she had 20 disabling migraines per month. Tr. 759, 816. However, the ALJ discussed that Plaintiff showed significant improvement with Botox treatment. Tr. 760, 762, 2888 (reporting "significant reduction" in migraines and "states overall she has done very well from a migraine standpoint", 2901 (70% reduction in migraines), 3037 ("stable from a migraine standpoint" and reporting Botox helped reduce her headaches "by at least 50%"). Further, Plaintiff reported improvement with bilateral occipital nerve blocks . Tr. 762, 3236). The ALJ also considered that Plaintiff's pain improved on medication. For instance, Plaintiff showed improvement in her pain symptoms with Plaquenil . Tr. 760, 762, 764). The ALJ appropriately considered the evidence when she determined that

Plaintiff's symptoms were manageable with appropriate medications, and this was another clear and convincing basis to discount Plaintiff's symptom testimony.

Plaintiff argues the ALJ erred by failing to acknowledge that her headache symptoms wax and wane when concluding her testimony was undermined by evidence of improvement with treatment. Pl. Br. at 11 (citing *Lester v. Chater,* 81 F.3d 821, 833 (9th Cir. 1996)). But, as noted above, this asks the Court to re-weigh the evidence, which is beyond the scope of review. *Ahearn*, 988 F.3d at 1115. And substantial evidence supports the ALJ's conclusion (even if there is other evidence that might support Plaintiff's version of events). Although Plaintiff points to parts of the record that suggest her symptoms could worsen based on situational stressors, *(see, e.g.,* Tr. 742, 815-817), the ALJ's overall conclusion that the longitudinal record showed a trajectory of improvement was a reasonable one, and a clear and convincing basis to rely upon to discount her testimony.

### III.    Step Five

Finally, Plaintiff argues the ALJ erred by relying on vocational expert testimony at step five that did not accurately account for Plaintiff's need to sit for six out of the eight hours of a work day. Pl. Br. at 14-17. The RFC is the most a person can do, despite the person's physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, available at 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Furthermore, "[u]nder Social Security Ruling [SSR] 00-4p,

15 - Opinion and Order

ALJs must identify and obtain a reasonable explanation for any conflicts between occupational

evidence provided by VEs [Vocational Experts] and information in the Dictionary of

Occupational Titles (DOT)." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194 (9th Cir. 2022) (cleaned

up). When a conflict exists, the ALJ must "explain in the ... decision how he ... resolved the

conflict." SSR 00-4p at *4

Plaintiff argues the ALJ erred by failing to resolve a conflict between the jobs the VE

identified at step five and her need to sit for up to six hours a day. Pl. Br. at 15. As discussed

above, the ALJ reasonably formulated an RFC that Plaintiff could perform light work, and

supported the decision to do so with substantial evidence. Nor was there any conflict within the

VE's testimony for the ALJ to resolve. The ALJ asked the vocational expert to consider a person

who could perform light work but could only stand and walk two hours total in an eight-hour

workday and sit about six hours in an eight-hour workday, with additional postural,

environmental, and manipulative limitations . Tr. 827. The vocational expert testified that such a

person could perform light, unskilled work, including as a collator operator, routing clerk, and

retail marker. Tr. 828. Thus, even though Plaintiff could not stand and walk long enough to

perform the full range of light work, the uncontested vocational expert testimony demonstrates

that there are light work jobs that she could perform. Tr. 828. Plaintiff's arguments about

sedentary work merely rehash her earlier arguments about symptom testimony and fail for the

reasons previously articulated. *See Stubbs-Danielson*, 539 F.3d at 1175–76 (rejecting a step five

argument that "simply restates" arguments about medical evidence and testimony); *Hairston v.

Saul*, 827 Fed. App'x 772, 773 (9th Cir. 2020) (summarily rejecting claimant's arguments that

RFC and step-five findings were unsupported by substantial evidence as "derivative of her

preceding arguments addressed and rejected above."). Because Plaintiff's step five argument

adds nothing new, the Court finds the ALJ did not err at these stages of the analysis either.[4]

## ORDER

The ALJ properly evaluated the medical record, formulated an RFC supported by

substantial evidence and did not er at step five. For the reasons set forth above, the decision of

the Commissioner is AFFIRMED.


It is so ORDERED and DATED this 28 day of May, 2025.


MARK D. CLARKE
United States Magistrate Judge

---

[4] Plaintiff also suggests that "[e]ven looking at the evidence that the ALJ did not consider regarding the sedentary jobs the vocational evidence supports a finding of disability." Pl. Br. at 15. Because Plaintiff's arguments relate to job numbers the ALJ did not rely upon in making her disability finding, these figures are neither significant nor probative, and the Court does not consider them here. *Wischmann v. Kijakazi*, 68 F.4th 498, 506 (9th Cir. 2023).